JOSHUA HUNT and another *v.* FRANCIS PRATT.

The goods of the plaintiff were seized by a deputy sheriff under a writ of attachment sued out by a third person against the plaintiffs' assignors, in which suit the defendant had no interest or agency. This writ was never proceded with, or entered in court; but whilst the deputy sheriff was in possession of the goods attached under it, the defendant placed his writ of attachment in the hands of the same deputy sheriff, directing him to attach the goods as those of the plaintiffs' assignors, under which writ 'the goods were detained by him as attached, and were subsequently sold upon the execution obtained by the defendant in the suit commenced by it: *Held*, that the plaintiffs, as owners of the goods, could not maintain *trespass* against the defendant, but that their remedy against him was in *trover*.

THIS was an action of trespass, brought by the plaintiffs, as assignees, under a voluntary assignment, of the late firm of Hunt, Farnum & Co., for the taking and carrying away of certain woolen machinery and tools and certain white and colored cotton, from their possession in Pawtucket, Massachusetts.

The case was tried before the court, at the March term, 1862, when it appeared, that on or before the 13th day of July, 1860, the plaintiffs were possessed, as assignees of Hunt, Farnum & Co., of a lease-hold interest in a mill estate, land and buildings, in Pawtucket, Massachusetts, and of the personal property, the

subject of this action, contained therein; that, on that day, a writ in favor of one Frederic Bates, against said Hunt, Farnum & Co., was placed in the hands of one Joshua Lathrop, Jr., then a deputy sheriff, upon which said Lathrop entered said mill by breaking open a window, and from the inside removing a lock on the outside door, for which he substituted a new lock, of which he retained the key, by which acts, and the exclusion from the premises of the keeper of said goods, appointed by the plaintiffs, he claimed to have attached upon his writ the said personal property; that said property was not removed by him from said mill, nor had he any other possession of the same than as aforesaid, not claiming to have attached the building or lease-hold interest in the mill estate; that this attachment was void *ab initio*, being founded upon a claim upon which the attachment could not be sustained, and no return was made by said deputy sheriff upon said writ, nor was it ever returned to court; that the next day after, the same attorney who issued the above writ, issued another writ against the said Hunt, Farnum & Co., in favor of the defendant, which said writ, the defendant, knowing of the plaintiffs' claim to said property, placed in the hands of said Lathrop, with directions to serve it by attaching said personal property, the subject of this suit. The attachment was accordingly made by Lathrop, and the goods subsequently sold under the execution obtained in the attachment suit, and bought in by the defendant, who resold them and applied the proceeds to his own use.

Upon this showing, the court ordered the plaintiffs to be non-suited, on the ground, that trover, not trespass, was the proper remedy, with leave to the plaintiffs to move to set aside the non-suit, and for a new trial; which was now moved by

*Thrasher, with whom was Tillinghast, for the plaintiffs :*—

Under the statement as allowed, the plaintiffs, at the time of the alleged trespass, had constructive possession, they being the general owners and having, at the time, the right of immediately reclaiming the property,—the first attachment being entirely void *ab initio*, as declared by this court in the case of *Hunt et al. v. Lathrop*, at the September term, 1861,—and so the plaintiffs can well maintain this action. There is no difference in this respect

between trover and trespass *de bonis.* In the language of Chief Justice Parker, in *Woodruff* v. *Halsey,* 8 Pick. 335,—"In regard to personal property or chattels, the law is, that trespass may be maintained by one who has the actual or constructive possession. Constructive possession is where the general owner, although the chattel is in the actual possession of another, has the right to reclaim it immediately, the person in possession *not being entitled to retain it against his will.*" Or, as stated by Ashhurst, J., in *Smith* v. *Milles,* 1 Term. Rep. 480,—"To entitle a man to bring trespass, he must, at the time when the act was done which constitutes the trespass, either have the actual possession in him of the thing which is the object of the trespass, or else he must have a constructive possession in respect of the *right being actually* vested in him.*" See also 2 Saunders' Rep. 47, a, b, notes ; 1 Chitty's Pleading, 168 to 172, Springfield ed. 1851 ; compare under Trover, Ib. 148-9 ; 1 Archb. Nisi Prius, Phila. ed. 1863, 483, marg.—top 549 ; *Harrison* v. *Parker,* 6 East. 154 ; *Martindale* v. *Booth,* 3 Barn. & Adolph. 498, (23 E. C. L. 130); *Wilson* v. *Mackreth,* 3 Burr, 1824 ; compare *Smith* v. *Sheriff,* 15 East. 607 ; *Walcot* v. *Pomeroy,* 2 Pick. 121 ; *Woodruff* v. *Halsey,* 8 Pick. 333, cited *supra ;* Holly v. *Huggeford,* 8 Pick. 73 ; *Brackett* v. *Bullard,* 12 Metcalf, 308 ; *Freeman* v. *Rankins,* 8 Shep. 446 ; a precisely parallel case, *Cox* v. *Hall,* 18 Verm. 191 ; *Shloss* v. *Cooper,* 27 Verm. 623, (1 Wms.) ; *Root* v. *Chandler,* 10 Wend. 110. "If goods be taken by trespass from a trespasser, the owner may bring trespass against the last trespasser." *Barret* v. *Warren,* 3 Hill, 348 ; *Fuller* v. *Rounceville,* 9 Foster, 554 ; *Neff* v. *Thompson,* 8 Barb. Sup. Co. 213 ; *King* v. *Humphrey,* 10 Penn. (Barr), 217.

*Blodgett, with whom was R. W. Greene, for the defendant:*—

The plaintiffs, at the time of the attachment made in favor of the defendant, were not in possession of the property ; and their title thereto had been interrupted, and was, at that time, in suspense. They had no right to the immediate possession. There was an exclusive and adverse possession by a third person. Therefore they cannot maintain trespass against the defendant. *Van Brunt* v. *Schenck,* 11 Johns. 377 ; *Bourne* v. *Merritt,* 22 Verm. 429.

AMES, C. J. The question raised by this motion is, whether the wrong set down in it as done by the defendant, is the proper subject of an action of trespass, or, in other words, was a forcible injury to the plaintiffs' possession of their goods? An officer of the law had already taken the goods of the plaintiffs into his possession on a writ of attachment, sued out by a stranger, against the plaintiffs' assignors. In this act of trespass the defendant had taken no part, by action, authorization, or ratification; but finding the goods thus in the hands of the officer, under color of right, he places another writ of attachment against the assignors in the officer's hands, and directs him to hold the goods for the security of his own debt, to be ascertained by judgment. We are at a loss to discover, in the delivery of his writ to the officer, any forcible injury committed by the defendant upon the plaintiffs, or, at the time of delivery, any such possession of the goods by the plaintiffs, as entitles them to maintain an action of trespass against him.

At that time, the plaintiffs had neither the actual or constructive possession of their goods; since they were in the hands of the officer, held by him adversely to them, wrongfully, it is true, but under a claim of right. The general property in goods draws to it the possession of them, when unpossessed by others, or possessed by others in right of the general owner; but how, in any sense, can the owner of goods be said to possess them, when they are actually in the possession of another, who holds them adversely to him under claim of right? The cases cited to this point by the plaintiffs found themselves upon the text of Chitty, who, in his work on Pleading, p. 171, says:—"if a second trespasser takes goods out of the custody of the first trespasser, the owner may support trespass against such second trespasser; his act not being excusable." The reason given by Chitty is certainly a good one why the owner should maintain *an action* against the second trespasser, but none whatever why he should maintain *trespass*. The authority cited by him is Siderfin, 438, which contains one of many reports of the well-known case of *Wilbraham* v. *Snow*, found, amongst other places, in 2 Saund. 47. Now, the only point decided, or even mentioned, by the Court of King's Bench in that case is, that a sheriff has such a

property in goods seized by him in execution, that he may maintain trespass or trover against one who takes and carries them away, and converts them to his own use. - Siderfin's note *indeed* is :—" If A takes my goods and then B takes them from A, I may have trespass or trover against the one or the other, at my election ; although the opinion in Croke is, that I cannot have trespass against B." See Sid. 438. This might well be the opinion in Croke, since the law was precisely so settled, as appears by the digests and reports used in those days. Brooke, Abr. Trespass, pl. 358, citing 21, Ed. 4, 74 ; Rolle's Abr. Trespass, Y. 19, p. 556, citing case of *Day* v. *Austen*, 37 Eliz. B. R. See also 20 Vin. Abr. Trespass, R. 3, and cases cited.

Not much weight can be given to the note of Siderfin, who is called, in 2 Vent. 243, " a young reporter," and of whom Lord Mansfield said, in *Cooper and another* v. *Chitty and another*, 1 Burr, 35, when speaking of his report of the case of *Bailey* v. *Bunning*, that " Siderfin did not seem to know what the court was going upon ; for the court tied it up to the taking ; whereas, *he* does not seem to distinguish between trover and trespass." It is evident that he was laboring under the same want of discrimination when he added the above note to his report of *Wilbraham* v. *Snow*.

But however this may be, in the case at bar the defendant did not stand in the plight of a trespasser upon the officer, nor did he *take* the goods at all, but simply by delivering his writ to the officer, directed him to hold the goods, already *taken* by the officer upon the writ of another, for his, the defendant's, security; and this the officer did. Now, if the sheriff, considered as having obtained the goods by trespass, had actually delivered them to the defendant, it is old law, from the year books downward, that the receiving of the goods from him by the defendant could not subject the latter to trespass, at the suit of the general owner. Ibid, and see 2 Rolle's Abr. Trespass, Y. 18, p. 556 ; 4 Inst. 317; 6 Com. Dig. Trespass, D ; *Wilson* v. *Barker*, 4 Barn. & Adolph, 614 ; and see *Wright* v. *Woollen*, 7 Law Times Rep. N. S. 73. As remarked by Mr. Justice Parke, in *Wilson* v. *Barker*, "Lord Coke, in 4 Inst. 317, states, as a difference between the forest law and the common law, that, by the former, whosoever receives

within the forest any malefactor in hunting or killing the king's deer, knowing him to be such malefactor, or any flesh of the king's venison, knowing it to be the king's, is a principal tres-passer; whereas, by the common law, he that receiveth a tres-passer, and agreeth to a trespass after it be done, is no trespasser, unless the trespass was done to his use, or for his benefit, and then his agreement subsequent amounteth to a commandment, for in that case, *omnis ratihabitio retrotrahitur et mandato equi-paratur*; by the law of the forest, such a receiver is a principal trespasser, though the trespass was not done to his use." If the actual receiving of the goods by the defendant from the sheriff, when he knew that the sheriff had obtained them by trespass, would not constitute the defendant a trespasser, provided the trespass was not originally committed to his use, or for his benefit, how much less will the act of the defendant, who, finding the officer in the quiet, and, as he supposed, lawful possession of the plaintiffs' goods, merely directed him by a writ of attachment to detain them for the security of his debt against another, whose goods he was advised that they were! It would be new law, indeed, if the mere unlawful detainer of goods, or participation in such an act, amounted to that forcible invasion of the owner's possession of them which the law denominates a trespass.

In fine, in looking at what the defendant did, we find an ab-sence of that character and degree of wrong which subjects him to punishment as a trespasser. As reasoned by Lord Mansfield, when treating, in *Cooper and another* v. *Chitty and another*, 1 Burr, 35, of the distinction between an act which subjects a man to an action of trespass, and an act which subjects him to an action of trover, it is one thing whether the act be lawful, and quite another whether he is to be excused from punishment for it as a trespasser. Though time has softened down the differ-ences between the actions of trespass and trover, or other actions of the case, yet, looking back upon them, we find that they are, in *their natures*, as the pleaders phrase it, essentially distinct. The one, being for a wrong committed by the direct force of the malfeasor, included not only redress to the plaintiff, but punish-ment to the defendant; and the judgment was a *capiatur*, upon which the person of the defendant was taken and imprisoned

until he paid a fine.\* Upon the other hand, when a party was subjected upon a tort not committed with force, as in trover or other actions upon the case, the judgment was a *misericordia*, and, the defendant was *amerced*, that is, subjected to a nominal fine merely. This difference in *the nature* of the actions, though there is now neither fine nor amercement, in legal idea so separates them, that counts in trespass and trover cannot be joined in the same declaration, as counts in actions of the same nature may be. See 1 Sellon's Pract. Introd. 42, 43, 52. If it should be said to be, at this day, theoretical rather than practical, it distinctly marks the boundary between different kinds of wrong, and the different remedies appropriate to them.

The nonsuit was, we think, properly ordered in this case, and this motion to set it aside must be denied, with costs.

---

\* In the Paston Letters, it appears, from the prefatory note to letter 239, that John Paston was imprisoned in consequence of a writ of trespass brought against him by William Jenny, Esq., sergeant-at-law, in Easter term, 4 Ed. 4, 1464, when the issue being found for the plaintiff, a *capias pro fine* was awarded for the king; Paston absconded, and the *exigent* was awarded and directed to the sheriff of Suffolk, and he was called at four county courts; but before the fifth, he surrendered himself, and was committed to the Fleet.